PHILIP CAMARCO, JR., A CITIZEN AND RESIDENT OF NEW JERSEY, AND RUTH SEGLIN, A CITIZEN AND RESIDENT OF THE CITY OF ORANGE, PLAINTIFFS-APPELLANTS, v. CITY OF ORANGE, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, GENNARO D'ANGELIS, IN HIS CAPACITY AS DIRECTOR OF THE POLICE DEPARTMENT OF THE CITY OF ORANGE, JOSEPH MAGRINO, IN HIS CAPACITY AS CORPORATION COUNSEL OF THE CITY OF ORANGE, AND THOMAS J. FREDA, IN HIS CAPACITY AS CLERK OF THE MUNICIPAL COURT OF THE CITY OF ORANGE, DEFENDANTS-RESPONDENTS.

Argued September 11, 1972—Decided October 10, 1972.

*Mr. Joseph Lunin* argued the cause for plaintiffs-appellants (*Mr. Mitchell Melnikoff,* attorney).

*Mr. Stanley Wang* argued the cause for the defendants-respondents.

PER CURIAM. We affirm for the reasons expressed by the Appellate Division in *Camarco v. City of Orange,* 116 *N. J. Super.* 531 (1971).

In July 1969, the plaintiff Philip Camarco, Jr., a resident of West Orange, was arrested by members of the Orange Police Department and was charged with loitering in a local

parking lot in violation of an ordinance of the City of Orange. While the charge against him was pending he instituted a declaratory judgment proceeding seeking to have the ordinance declared unconstitutional. See *State v. Baird*, 50 *N. J.* 376, 378–379 (1967); *cf. Anderson v. Sills*, 56 *N. J.* 210, 220–221 (1970). In September 1969, the loitering charge was dismissed and shortly thereafter the City of Orange replaced the ordinance under which Camarco had been charged with a new and more detailed anti-loitering ordinance. In November 1969, Camarco's declaratory judgment proceeding was amended to include the new ordinance; in addition Ruth Seglin, a resident of Orange, was then joined as an additional party plaintiff. On cross motions for summary judgment the Law Division held that the plaintiffs had sufficient standing and that the new ordinance was not unconstitutionally vague or overbroad. See *Camarco v. City of Orange*, 111 *N. J. Super.* 400 (*Law Div.* 1970).

The plaintiffs duly appealed to the Appellate Division and renewed their attack on the ordinance. The defendants did not question the Law Division's holding on standing and supported its holding of constitutionality. The Appellate Division readily recognized that if the ordinance broadly proscribed loitering or idling without more it would be unconstitutional. 116 *N. J. Super.* at 534; see *State v. Caez*, 81 *N. J. Super.* 315 (*App. Div.* 1963); *People v. Diaz*, 4 *N. Y.* 2d 469, 176 *N. Y. S.* 2d 313, 151 *N. E.* 2d 871 (1958); *cf. Coates v. Cincinnati*, 402 *U. S.* 611, 91 S. Ct. 1686, 29 *L. Ed.* 2d 214 (1971). On the other hand it recognized with equal readiness that if the ordinance simply proscribed loitering which obstructs, molests or interferes with others lawfully in public places or which threatens an immediate breach of the peace it could withstand constitutional attack. 116 *N. J. Super.* at 536–538; see *In re B. N.*, 99 *N. J. Super.* 30 (*App. Div.* 1968); *cf. Chaplinsky v. New Hampshire*, 315 *U. S.* 568, 62 S. Ct. 766, 86 *L. Ed.* 1031 (1942); *Shuttlesworth v. Birmingham*, 382 *U. S.* 87, 91, 86 S. Ct. 211, 213, 15 *L. Ed.* 2d 176, 180 (1965). With

the foregoing in mind the Appellate Division narrowly construed the ordinance so as to render it constitutional; in so doing it followed traditional judicial principles which have been geared to the fair assumption that the wishes of the legislative body would be furthered by upholding its proscriptive goals to the extent constitutionally permissible. See *State v. Zito*, 54 *N. J.* 206, 218 (1969) ; *State v. Profaci*, 56 *N. J.* 346, 349–350 (1970) ; cf. *State v. Hudson County News Co.*, 35 *N. J.* 284, 294 (1961) ; *Sutherland, Statutory Construction* § 5823 (*3d ed.* 1943).

The Appellate Division construed the ordinance in the following manner: section 2(a) proscribes only "such loitering conduct as clearly will cause an immediate, actual physical violent reaction from any person, which violent reaction will cause a threat to the peace and order of the public" (116 *N. J. Super.* at 536) ; 2(b) proscribes loitering which will so disturb a person of ordinary sensibilities "as to cause such person to react immediately in such a way as to threaten by physical violence the peace and order of the public" (116 *N. J. Super.* at 537–538) ; 2(c) proscribes loitering which "obstructs the free passage of pedestrians or vehicles" (116 *N. J. Super.* at 538) ; 2(d) proscribes loitering when it will "obstruct, molest, or interfere" with any person lawfully in a public place (116 *N. J. Super.* at 538) ; and section 3 provides, in effect, that where there is conduct contrary to section 2 there must, in addition, be a refusal to obey a police order to move on before a charge under the ordinance may be prosecuted (116 *N. J. Super.* at 538). As thus narrowly construed, the Appellate Division found the ordinance to be "a proper exercise by the City of Orange of its delegated powers" and "not in violation of either the United States or the New Jersey Constitutions." 116 *N. J. Super.* at 538. We see no basis for differing with this finding. See *Chaplinsky v. New Hampshire, supra*, 315 *U. S.* 568, 62 *S. Ct.* 766, 86 *L. Ed.* 1031; *Shuttlesworth v. Birmingham, supra*, 382 *U. S.* 87, 86 *S. Ct.* 211, 15 *L. Ed.* 2d 176; cf. *State v. Smith*, 46 *N. J.* 510, *cert. denied*, 385

*U. S.* 838, 87 *S. Ct.* 85, 17 *L. Ed.* 2d 71 (1966); *In re B. N., supra,* 99 *N. J. Super.* 30; *State v. Furino,* 85 *N. J. Super.* 345 (*App. Div.* 1964).

▆ The City of Orange did not question the narrowing construction of its ordinance; on the contrary it actually advanced such construction in the Appellate Division and before us it has urged that "the construction put forward herein by the defendant and accepted by the lower courts should be adopted." Its counsel asserted at oral argument that after the lower court opinions were filed he specifically advised the Orange police as to the judicial construction of the ordinance and perhaps he has initiated or will initiate steps towards a suitable comprehensive ordinance revision. However, it is entirely clear that in the meantime the ordinance stands as if the judicial construction had formally been incorporated therein; the situation in this regard is no different than that presented when State statutes receive, as they so often do, interpretations other than strictly literal ones. See *Lloyd v. Vermeulen,* 22 *N. J.* 200, 205 (1956); *cf. State v. Zito, supra,* 54 *N. J.* 206, 218; *State v. Profaci, supra,* 56 *N. J.* 346, 349–350.

▆ Despite the fact that the Appellate Division's construction favored the interests of the plaintiffs, they filed a notice of appeal to this Court, purportedly under Rule 2 :2–1 (a). The defendants did not move for dismissal of the appeal though they might well have done so. See *Deerfield Estates, Inc. v. Tp. of East Brunswick,* 60 *N. J.* 115 (1972); *Tidewater Oil Co. v. Mayor and Council of Carteret,* 44 *N. J.* 338 (1965). Before us the plaintiffs did not dispute that an ordinance drawn narrowly in accordance with the Appellate Division's construction would be constitutional. Nonetheless they still sought to attack the broad terms of the ordinance. They were in no legal position to press such attack for they were no longer legally aggrieved since the limiting construction by the Appellate Division in their favor was binding on the City and its police officers. In any event, we subscribe to the Appellate Division's construction

which rendered the ordinance constitutional and its judgment is accordingly:

Affirmed.

CONFORD, P. J. A. D., Temporarily Assigned, concurring in part and voting to dismiss the appeal. I agree with so much of the court's opinion as expresses the view that plaintiff's are not aggrieved by the determination of the Appellate Division and that the appeal might well be dismissed as not raising a substantial constitutional issue in the light of that determination. I would accordingly dismiss the appeal on the court's motion rather than affirm the Appellate Division decision as I cannot in conscience agree with that tribunal's construction of the ordinance.

The principle of judicial preference for that one of two possible constructions of an ordinance or statute which will render it constitutional requires that the legislation be "reasonably susceptible to such interpretation." *State v. Profaci,* 56 *N. J.* 346, 350 (1970). I cannot find the interpretation by the Appellate Division of Section 2(b) and 2(d) of the ordinance, or of the effect of Section 3, as within a reasonable reading of those provisions in the light of the text of the ordinance as a whole. To read into both 2(b) and 2(d), as the Appellate Division did, the qualification that the forbidden conduct must be such as to threaten physically "the peace and order of the public" is to ignore that the ordinance separately, in Section 2(a), already forbids loitering which would "create or cause to be created a danger of a breach of the peace" and that therefore the other mentioned paragraphs of Section 2 must have meant to proscribe conduct which need not create a danger of breach of the peace. That being so, and those paragraphs extending, *inter alia,* to conduct which is an "annoyance" to, or "calculated to annoy or disturb," others, they fall afoul of the structures against facial overbreadth in relation to freedom of expression, as applied to substantially similar ordinance language, recently reiterated by the United States Supreme Court in *Coates v. Cincinnati,* 402 *U. S.* 611, 91 *S. Ct.* 1686, 29 *L. Ed.* 2d 214 (1971) and

*Gooding v. Wilson,* 405 *U. S.* 518, 92 *S. Ct.* 1103, 31 *L. Ed.* 2d 408 (1972) ; see also *Rosenfeld v. New Jersey,* 408 *U. S.* 901, 92 *S. Ct.* 2479, 33 *L. Ed.* 2d 321 (June 26, 1972) ; *State v. Rosenfeld,* 120 *N. J. Super.* 458 (App. Div. 1972).

There was, further, no reasonable basis for the Appellate Division to hold that there could be no consummated offense under any paragraph of Section 2 unless the offender also refused to move on at the request of an officer, as required by Section 3. The ordinance cannot in my judgment be reasonably read that way. Section 7 says the violation of any provision of the ordinance is punishable as an offense. Thus conduct violative of any provision of Section 2 is a completed offense even if there is no officer present to require the offender to move on. Violation of Section 3 is in terms an offense dependent on violation also of one of the provisions of Section 2, but not *vice-versa.* In this regard, however, it is clear that potential offenders benefit by the construction arrived at in the Appellate Division, and plaintiffs are therefore not aggrieved thereby.

I agree with the conclusion below as to the validity of Section 2(a) and 2(c) (obstructing free passage).

In sum, I would, had I sat below, have felt constrained to hold Sections 2(b) and 2(d) facially invalid but would have sustained as separable Sections 2(a) and 2(c), holding violation of either of those paragraphs punishable independently of Section 3. I deem the latter section entirely unobjectionable as it requires a determination by the police officer that the offender's presence threatens the preservation of the public peace and safety.

Since plaintiffs cannot seriously contend that there is anything unconstitutional about an ordinance that (as construed) simply prohibits loitering in a manner creative of a danger of a breach of the peace or such as would obstruct the free passage of pedestrians or vehicles, and not even that unless there is also disobedience of a police order to move on, as the ordinance was in effect construed below, they are not

constitutionally aggrieved by the determination of the Appellate Division, and the appeal should be dismissed.

CONFORD, P. J. A. D., Temporarily Assigned, concurs in part and votes to dismiss the appeal.

*For affirmance*—Chief Justice WEINTRAUB, Justices JACOBS, PROCTOR, HALL and MOUNTAIN and Judge SULLIVAN—6.

*For dismissal of the appeal*—Judge CONFORD—1.

*For reversal*—None.