STATE OF NEW JERSEY, CITY OF NEWARK, PLAINTIFF-APPEL-
LANT, v. JAMES CRAWLEY, RANDALL BECK, CORNELL
DANIELS AND ELIEZER MARTINEZ, DEFENDANTS-RE-
SPONDENTS.

Argued January 26, 1982—Decided July 14, 1982.

242

*Abilio Mendez,* Assistant Corporation Counsel, argued the cause for appellant (*John J. Teare,* Corporation Counsel, attorney; *Hugh B. Gallagher,* Assistant Corporation Counsel, on the brief).

*John M. Cannel,* Assistant Public Defender, argued the cause for respondents (*Stanley C. Van Ness,* Public Defender, attorney).

*Anne C. Paskow,* Deputy Attorney General, argued the cause for *amicus curiae* Attorney General of New Jersey (*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney).

The opinion of the Court was delivered by

O'HERN, J.

The issue here is whether Newark's municipal loitering ordinance has been preempted by the New Jersey Code of Criminal Justice, *N.J.S.A.* 2C:1–1 to 98–4.

On various dates in 1979 defendants Randall Beck, Cornell Daniels, Eliezer Martinez and James Crawley were separately

charged with loitering in violation of Newark Revised Ordinances § 17:2–14 (N.R.O. 17:2–14). The complaints against Beck, Daniels and Martinez alleged that each "did then and there loiter without legitimate purpose or reason" at a specified time and place within the City of Newark. The complaint against Crawley charged that he had loitered "with intent to buy or sell drugs." The alleged offenses occurred both before and after September 1, 1979, the effective date of the New Jersey Code of Criminal Justice.[1]

Prior to trial all defendants moved before the municipal magistrate to dismiss the complaints on the ground that the municipal ordinance had been preempted and rendered unenforceable by the New Jersey Code of Criminal Justice, *N.J.S.A.* 2C:1–1 to 98–4. The magistrate, ruling that the State Penal Code had preempted the ordinance, dismissed the complaints. The City of Newark appealed to the Law Division. That court agreed with the municipal court that the loitering ordinance was preempted. The City then appealed to the Appellate Division and the Attorney General was invited to participate as *amicus curiae.* Before oral argument in the Appellate Division we directly certified the matter. 87 *N.J.* 426 (1981). We now affirm.

I.

Our holding rests primarily on the "preemption by exclusion" clause of *N.J.S.A.* 2C:1–5(d). This clause prohibits enactment or enforcement of any local ordinance "conflicting with any ... policy of this State ... whether that policy be expressed by inclusion of a provision in the code *or by exclusion of that subject from the code.*" [emphasis added]. With this provision, the Legislature meant to alert the judiciary to "the need to protect ... negative unexpressed state policies." *Final Report*

---

[1] The pre-September 1979 offenses were tried as though the new Code of Criminal Justice was then in force. See *N.J.S.A.* 2C:1–1(c).

of *N.J. Law Revision Commission,* Vol. II: Commentary, pp. 12–13. In this case, *N.J.S.A.* 2C:1–5(d) requires us to determine whether the absence of a general loitering proscription signifies an affirmative legislative intent to decriminalize that conduct except as covered by the Code.

Application of the "preemption by exclusion" branch of *N.J. S.A.* 2C:1–5(d) presents the judiciary with a difficult task. It requires us to determine the Legislature's will without reference to a specific statutory text. Courts must infer legislative intent from the overall structure of the Penal Code and its legislative history. In some cases such secondary sources may provide little guidance.

In this case there is ample evidence of legislative intent. Chapter 33 of the Code, entitled "Riot, Disorderly Conduct and Related Offenses," deals extensively with street conduct of the same class as loitering. It proscribes possession of alcohol in public places by minors, *N.J.S.A.* 2C:33–15; obstructing highways or public passages, *N.J.S.A.* 2C:33–7; interference with transportation, *N.J.S.A.* 2C:33–14; harassment, *N.J.S.A.,* 2C:33–4; failure to disperse on order of a peace officer, *N.J.S.A.* 2C:33–1; and disorderly conduct, *N.J.S.A.* 2C:33–2. Given the Legislature's comprehensive intervention in this area, we find the conspicuous absence of a loitering statute from chapter 33 of the Code to be significant. This omission is also significant because New Jersey's pre-Code criminal law included specific prohibitions on vagrancy and loitering. *N.J.S.A.* 2A:170–1 to –4. These provisions were repealed and not reincorporated into the new Code. Although the Criminal Law Revision Commission's proposed code contained a provision outlawing certain forms of loitering,[2] the Legislature removed that provision be-

---

[2] Originally designated as 2C:33–7 in the proposed code, the provision read:
A person commits a petty disorderly persons offense if he loiters or prowls in a place, at a time, or in a manner not usual for law-abiding individuals under circumstances that warrant alarm for the safety of persons or property in the vicinity. Among the circumstances which may

fore enactment. The absence of an official explanation of the deletion limits its value as an interpretative aid. See 2A *Sutherland, Statutory Construction* (4th ed., Sands, 1973), § 48.18. At the least, however, we know that the Legislature made a conscious decision to exclude a general loitering provision from the Code.[3] At the time the Legislature considered the proposed loitering provision, several jurisdictions had declared nearly identical legislation unconstitutional. *People v. Berck*, 32 *N.Y.* 2d 576, 347 *N.Y.S.2d* 33, 300 *N.E.2d* 411 (1973); *City of Portland v. White*, 9 *Or.App.* 239, 495 *P.2d* 778 (1972); *City of Bellevue v. Miller*, 85 *Wash.2d* 539, 536 *P.2d* 603 (1975). Moreover, the Criminal Law Revision Commission expressed doubts as to the constitutionality of the then extant loitering provisions, *N.J.S.A.* 2A:170–1 to –4. *Final Report of the New Jersey Criminal Law*

---

be considered in determining whether such alarm is warranted is the fact that the actor takes flight upon appearance of a peace officer, refuses to identify himself, or manifestly endeavors to conceal himself or any object. Unless flight by the actor or other circumstances makes it impracticable, a peace officer shall prior to any arrest for an offense under this section afford the actor an opportunity to dispel any alarm which would otherwise be warranted, by requesting him to identify himself and explain his presence and conduct. No person shall be convicted of an offense under this Section if the peace officer did not comply with the preceding sentence, or if it appears at trial that the explanation given by the actor was true and, if believed by the police officer at the time, would have dispelled the alarm.

[3]Professor Robert Knowlton, who chaired the Criminal Law Revision Commission that produced the Code, interpreted the omission as a legislative decision to decriminalize loitering.

[L]oitering was an offense that was wisely decriminalized under the new Code. Clearly section 2A:170–1 was difficult to accept even after Chief Justice Weintraub's attempt to make it respectable. [*State v. Zito*, 54 *N.J.* 206 (1969) ] The Model Penal Code draftsmen and the commissioners tried with little success to develop a defensible statute on loitering that would be definite enough to give notice, provide a standard of guilt, and prevent official harassment. To its credit, the Legislature abandoned the effort. It also deleted any additional sections in a valiant effort to bring criminal law back into a meaningful framework. This was probably its most significant accomplishment. [Knowlton, "Comments Upon the New Jersey Penal Code," 32 *Rut.L.Rev.* I (1979) (footnotes omitted) ].

*Commission*, Vol. II: Commentary p. 297. Vagrancy and loitering statutes have long suffered from constitutional infirmity and have been criticized as inviting official harassment and discriminatory enforcement. Justice Douglas observed in *Papacristou v. City of Jacksonville*, 405 *U.S.* 156, 92 *S.Ct.* 839, 31 *L.Ed.2d* 110 (1972) that such an "ordinance . . . permits and encourages an arbitrary and discriminatory enforcement of the law. It furnishes a convenient tool for 'harsh and discriminatory enforcement by local prosecuting officials, against particular groups deemed to merit their displeasure,' " citing *Thornhill v. Alabama*, 310 *U.S.* 88, 97–98, 60 *S.Ct.* 736, 741–42, 84 *L.Ed.* 1093, 1100 (1940). See also Douglas, "Vagrancy and Arrest on Suspicion," 70 *Yale L.J.* 1, 13 (1960). Notwithstanding that this Court has sustained the good account provisions of *N.J.S.A.* 2A:170–1 in *State v. Zito*, 54 *N.J.* 206 (1969) and a loitering ordinance in *Camarco v. City of Orange*, 61 *N.J.* 463 (1972) by narrowing judicial constructions that limited their scope to a constitutionally permissible range, it is likely that the Legislature shared the concerns of the Commission about constitutionality.

 In view of this legislative history, we conclude that the absence of a loitering proscription from the Code reflects a state policy to decriminalize such activity. We therefore hold that *N.J.S.A.* 2C:1–5(d) prohibits enforcement of the Newark loitering ordinance.

## II.

We are satisfied that this result accords with traditional principles of local legislative power and the doctrine of state preemption.

 *N.J.S.A.* 40:48–1 and *N.J.S.A.* 40:48–2 delegate to municipalities broad powers to adopt ordinances reasonably related to the public health, safety and welfare. *Quick-Chek Food Stores v. Springfield Tp.*, 83 *N.J.* 438 (1980); *N.J. Builders Assoc. v. Mayor East Brunswick Tp.*, 60 *N.J.* 222 (1972). Indeed, *N.J.S.A.* 40:48–1, reenacted only months before the Criminal

Code, specifically authorizes the adoption of municipal ordinances "to preserve the public peace and order; to prevent and quell riots, disturbances and disorderly assemblages; [and] to prevent littering, lounging or sleeping in the streets, parks or public places." Art. IV, § VII, par. 11 of our Constitution directs that grants of power to municipalities be liberally construed in favor of the local governments. Nevertheless, two principles limit the permissible scope of municipal legislation. First, as stated in *Wagner v. Newark*, 24 *N.J.* 467, 478 (1957), the grant of legislative powers to municipalities "relates to matters of local concern which may be determined to be necessary and proper for the good and welfare of local inhabitants, and not to those matters involving state policy or in the realm of affairs of general public interest and applicability." Second, municipalities may not enact ordinances on matters otherwise competent for local legislation if the State has preempted the field. *Overlook Terrace Management Corp. v. West New York Rent Control Bd.*, 71 *N.J.* 451, 460–62 (1976); *Summer v. Teaneck Twp.*, 53 *N.J.* 548, 554–55 (1969); *Kennedy v. Newark*, 29 *N.J.* 178 (1959).

In *Overlook, supra,* 71 *N.J.* at 461–62 this Court outlined the considerations relevant to the preemption issue:

1. Does the ordinance conflict with the state law, either because of conflicting policies or operational effect, that is, does the ordinance forbid what the Legislature has permitted?

2. Was the state law intended expressly or impliedly to be exclusive in the field?

3. Does the subject matter reflect a need for uniformity?

4. Is the state scheme so pervasive or comprehensive that it precludes coexistence of municipal regulation?

5. Does the ordinance stand as an obstacle to the accomplishment and execution of the full purposes and objectives of the Legislature? [Citations omitted].

The activities prohibited by N.R.O. 17:2–14 correspond closely to conduct addressed in chapter 33 of the New Jersey Code of Criminal Justice. Section 2(a) of the Newark ordinance proscribes loitering that causes a danger of a breach of the peace; *N.J.S.A.* 2C:33–2 proscribes conduct that creates a hazardous or

physically dangerous condition. Section 2(b) of the local law forbids loitering that creates any disturbance or annoyance to the comfort and repose of others; *N.J.S.A.* 2C:33–2 prohibits any offensive language in disregard of the expectations of another and *N.J.S.A.* 2C:33–4 prohibits communication at inconvenient hours, shoving, touching or any other course of alarming conduct. Section 2(c) of the ordinance proscribes loitering that obstructs the free passage of pedestrians or vehicles; *N.J.S.A.* 2C:33–7 proscribes obstructing highways and other public passages. Finally, section 2(d) of the Newark law forbids loitering that obstructs, molests or interferes with anyone lawfully in a public place. *N.J.S.A.* 2C:33–2 and *N.J.S.A.* 2C:33–4, outlawing offensive, improper behavior, offensive language, and harassment, encompass the conduct proscribed by this section of the ordinance.[4]

Of course, a municipal ordinance will not be invalidated on preemption grounds merely because it deals with substantially the same subject matter as a state statute. In *Township of Chester v. Panicucci*, 62 *N.J.* 94 (1973), we held that a state law prohibiting hunters from possessing or discharging firearms within 300 feet of certain dwellings merely expressed "a declaration of statewide policy of minimum regulation," and hence, did not preempt a more stringent municipal gun control ordinance. Although the statute and ordinance overlapped, we found no preemption because we concluded that the Legislature did not intend to prohibit complementary local legislation. *See Dome Realty, Inc. v. Paterson*, 83 *N.J.* 212 (1980); *Danmark, Inc. v. Township of South Brunswick*, 184 *N.J.Super.* 478 (Law Div. 1982).

---

[4]Although Newark's ordinance defines "loitering" broadly as "remaining idle in essentially one place ... spending time idly, loafing or walking about aimlessly, [or] ... 'hanging around' ", the City concedes that it cannot penalize such behavior without more. *See Camarco v. City of Orange*, 61 *N.J.* 463 (1972); *State v. Zito*, 54 *N.J.* 206 (1969). Rather, Newark accepts for its own ordinance the narrowing judicial construction applied to an identical law in *Camarco, supra*.

Relying on such principles, the State argues that chapter 33 of the Code establishes only minimum statewide regulation of loitering-related activities, that N.R.O. 17:2–14 complements the state law, and therefore, that the Newark ordinance should be viewed as permissible local supplementation of state legislation.

We disagree. In *State v. Ulesky*, 54 *N.J.* 26, 29 (1969), we held that "a municipality may not deal with a subject if the Legislature intends its own action, whether it exhausts the field or touches only part of it, to be exclusive...." Thus, a state statute may invalidate a municipal ordinance even if the statute does not occupy the entire field or facially conflict with the local law. When the Legislature intends a statute to be the sole regulator of an area, local legislation in that area is precluded. *Id.; Overlook Terrace Mgmt. Corp. v. West N.Y. Rent Bd., supra,* 71 *N.J.* 451; *Brunetti v. Milford,* 68 *N.J.* 576 (1975).

In *Brunetti* we held that state landlord-tenant legislation preempted the eviction provisions of a local rent control ordinance even though there was no apparent conflict between the two laws. Because the state enactment provided "a complete system of law," we inferred a legislative intent to exclude parallel local legislation. Similarly, in *Wein v. Town of Irvington,* 126 *N.J.Super.* 410 (App.Div.), certif. den., 65 *N.J.* 287 (1974), the court voided a municipal pornography ordinance on preemption grounds because the corresponding state statute manifested "a clear design for uniform statewide treatment." *Id.* 126 *N.J.Super.* at 414.

The Code of Criminal Justice itself manifests both a "clear design for uniform statewide treatment" and a "complete system of law" sufficient to compel an inference that the Legislature intended chapter 33 of the Code to preempt local loitering laws. The Legislature's central purpose in enacting the Penal Code was to create a consistent, comprehensive system of criminal law. The Legislature stated these goals in *L.* 1968, *c.* 281 § 4, the statute that established the New Jersey Criminal Law Revision Commission:

... It shall be the purpose of [the Code of Criminal Justice] to modernize the criminal law of this State so as to embody principles representing the best in modern statutory law, *to eliminate inconsistencies, ambiguities, outmoded and conflicting, overlapping and redundant provisions* and to revise and codify the law in a logical, clear and concise manner. [Emphasis added]

If municipalities were permitted to adopt local counterparts to provisions of the Code, the express legislative policy of eliminating "overlapping and redundant provisions" from the criminal law would be defeated. This policy, then, implies a general legislative intent to exclude local legislation from areas covered by the Code of Criminal Justice. The Legislature explicitly stated its intent in *N.J.S.A.* 2C:1–5(d):

Notwithstanding any other provision of law, the local governmental units of this State may neither enact nor enforce any ordinance or other local law or regulation conflicting with, or preempted by, any provision of this code or with any policy of this State expressed by this code, whether that policy be expressed by inclusion of a provision in the code or by exclusion of that subject from the code.

In view of this statutory command, the legislative policy of eliminating overlapping provisions, the comprehensiveness of the Code, and the need for uniformity in this constitutionally delicate area of the criminal law,[5] we conclude that *N.J.S.A.* 2C:33–1 to –14 preempts concurrent municipal legislation. Since the provisions of N.R.O. 17:2–14 substantially overlap provisions of chapter 33 of the Code, we hold that the Newark ordinance has been preempted and may not be enforced against these defendants.

III.

We share the genuine concerns of the City of Newark about disorderly, antisocial, or environmentally destructive behavior that occurs in non-public areas, such as vacant lots and abandoned buildings. Such conduct may be regulated either by provisions of the Code, such as *N.J.S.A.* 2C:33–2, prohibiting

---

[5]See, *e.g., Papacristou v. City of Jacksonville*, 405 *U.S.* 156, 92 *S.Ct.* 839, 31 *L.Ed.2d* 110 (1972); *Camarco v. City of Orange, supra*, 61 *N.J.* 463; *State v. Zito*, 54 *N.J.* 206 (1969).

offensively coarse or abusive language in a "neighborhood," or *N.J.S.A.* 2C:33–4, prohibiting harassment of others in any place, or by provisions of local ordinances dealing with property offenses, vandalism, pollution and public health. Such local ordinances are not preempted by this decision. The City is also concerned that the Code's limit on a police officer's authority to disburse unruly crowds to groups of five or more, *N.J.S.A.* 2C:33–1(b), unduly interferes with its police power. But the five persons measure does not limit the ability to deal with disorderly individuals in groups of less than five. The Code provisions enhance disorderly conduct by more than five to riot, a fourth degree crime for the participants, and permits police to disburse even orderly *bystanders* "in the immediate vicinity." *N.J.S.A.* 2C:33–1(a) and (b). Finally, if a person's conduct is such that an officer has probable cause to arrest, for example, for attempted burglary, or, as in this case against Crawley, for an attempt to buy or sell drugs, an arrest can properly be made, and no ordinance is needed to authorize the arrest. See *N.J.S.A.* 2C:5–1.

## IV.

To summarize, the basic purpose of the New Jersey Code of Criminal Justice is to create a comprehensive system of criminal law. The legislative history does not suggest that the Legislature intended to leave this area of criminal law to a patchwork of municipal regulations. The exclusion of a loitering provision from the Code expresses a state policy not to penalize such conduct.

The judgment of the Superior Court, Law Division is affirmed.

*For affirmance*—Chief Justice WILENTZ and Justices PASHMAN, CLIFFORD, SCHREIBER, HANDLER, POLLOCK and O'HERN—7.

*For reversal*—None.