879 A.2d 1206 (2005)
379 N.J. Super. 515
STATE of New Jersey, by the ATLANTIC COUNTY PROSECUTOR, Plaintiff-Respondent,
v.
CITY OF ATLANTIC CITY, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued May 10, 2005.
Decided August 16, 2005.
Robert S. Sandman, Atlantic City, argued the cause for appellant (Hankin, *1207 Sandman, Bradley & Palladino, attorneys; Mr. Sandman, on the brief).
Murray A. Talasnik, First Assistant Prosecutor, argued the cause for respondent (Jeffrey S. Blitz, Atlantic County Prosecutor, attorney; Jack J. Lipari, Assistant County Prosecutor, of counsel and on the brief).
Before Judges SKILLMAN, GRALL and CHAMBERS.
The opinion of the court was delivered by
SKILLMAN, P.J.A.D.
This appeal involves the validity of a municipal ordinance which establishes a needle exchange program that authorizes municipal health officials to distribute sterile hypodermic syringes to drug addicts for their use in injecting drugs. We conclude that this ordinance conflicts with the provisions of the Code of Criminal Justice that prohibit persons from using or assisting others in using controlled dangerous substances. Therefore, we affirm the judgment of the trial court declaring the ordinance to be invalid.
On June 16, 2004, the City Council of Atlantic City passed an ordinance entitled "Ordinance Establishing a Sterile Syringe Access Program in the City of Atlantic City." This ordinance declares that "the City of Atlantic City is facing a public health crisis due to the spread of injection-related HIV and hepatitis C in its communities;" that "60% of HIV infections in the City of Atlantic City are related to injection drug use;" and that "six reputable government studies and numerous clinical studies have proven sterile syringe access programs to be effective in reducing the spread of HIV, hepatitis C, and other blood-borne diseases, without increasing drug abuse, or other social harms." The ordinance also asserts that such a municipal needle exchange program would not violate the Code of Criminal Justice. Based on these and other findings, the City Council delegated authority to the Director of the Atlantic City Department of Health and Human Services "to establish a Harm Reduction Program with Sterile Syringe Access as part of the Department's HIV prevention program, and create guidelines and procedures for such a program." The Mayor of Atlantic City approved the ordinance on June 21, 2004.[1]
Shortly after the ordinance's adoption, the Atlantic County Prosecutor brought this action in lieu of prerogative writs challenging its validity. The trial court signed an order to show cause that temporarily restrained the ordinance's implementation. After briefing and oral argument, the trial court concluded in a written decision that the ordinance conflicts with and therefore is preempted by the provisions of the Code of Criminal Justice that prohibit the possession and distribution of drug paraphernalia. Accordingly, the court entered final judgment declaring the ordinance invalid and permanently enjoining its implementation. Atlantic City appeals from the judgment.
In 1987, the Legislature amended the Code of Criminal Justice by enactment of the Comprehensive Drug Reform Act of 1987. L. 1987, c. 106. This amendment included two new chapters of the Code: chapter 35 dealing with the possession, use, manufacture and distribution of controlled dangerous substances, L. 1987, c. 106, § 1, and chapter 36 dealing with the possession, use, advertising and distribution *1208 of drug paraphernalia, L. 1987, c. 106, § 2. Chapter 36 was formerly contained in N.J.S.A. 24:21-46 to -53, enacted in 1980, L. 1980, c. 133, which was closely patterned after the Model Drug Paraphernalia Act drafted by the Drug Enforcement Agency of the United States Department of Justice. Model Drug Paraphernalia Act (1979). Our Supreme Court upheld the constitutionality of the former drug paraphernalia law in Town Tobacconist v. Kimmelman, 94 N.J. 85, 462 A.2d 573 (1983).
Although the New Jersey drug paraphernalia law generally tracks the provisions of the Model Act, it departs from that law by inclusion of a separate section prohibiting the possession or distribution of a "hypodermic syringe," "hypodermic needle" or other similar instrument. N.J.S.A. 2C:36-6.[2] This section was amended in 1999 to add an exemption for physicians and other persons and entities that use hypodermic needles and syringes for legitimate purposes. L. 1999, c. 90, § 2; N.J.S.A. 2C:36-6(c).[3]
Atlantic City's argument that the ordinance establishing a needle exchange program does not violate the Code of Criminal Justice rests entirely on N.J.S.A. 2C:36-6. Therefore, we quote the pertinent parts of this section:
a. Except as authorized by subsection b., c. or other law, it shall be unlawful for a person to have under his control or possess with intent to use a hypodermic syringe, hypodermic needle or any other instrument adapted for the use of a controlled dangerous substance or a controlled substance analog as defined in chapter 35 of Title 2C of the New Jersey Statutes or to sell, furnish or give to any person such syringe, needle or instrument.
. . .
b. A person is authorized to possess and use a hypodermic needle or hypodermic syringe if the person obtains the hypodermic syringe or hypodermic needle by a valid prescription issued by a licensed physician, dentist or veterinarian and uses it for its authorized purpose....
c. Subsection a. does not apply to a duly licensed physician, dentist, veterinarian, undertaker, nurse, podiatrist, registered pharmacist, or a hospital, sanitarium, clinical laboratory or any other medical institution, or a state or a governmental agency, or a regular dealer in medical, dental or surgical supplies, or a resident physician or intern of a hospital, sanitarium or other medical institution.
Atlantic City argues that even though N.J.S.A. 2C:36-3 prohibits distribution of or possession with intent to distribute any "drug paraphernalia," which N.J.S.A. 2C:36-1 defines as including "all equipment, products and materials of any kind which are used or intended for use in... ingesting ... or otherwise introducing into the human body a controlled dangerous substance[,]" the history of the New Jersey drug paraphernalia law indicates that the Legislature intended the distribution of hypodermic needles and syringes to be governed solely by N.J.S.A. 2C:36-6. Atlantic City further argues that N.J.S.A. 2C:36-6(c) provides an absolute exemption from the offense proscribed by N.J.S.A. *1209 2C:36-6(a) for any category of person or entity listed in that section, which includes "a governmental agency," and that this term encompasses a municipality. Consequently, Atlantic City contends that any municipal official who distributes hypodermic needles or syringes under its needle exchange program would be exempt from prosecution under N.J.S.A. 2C:36-6(a) and would not be subject to prosecution under any other provision of the Code.
The County Prosecutor responds that hypodermic needles and syringes fall within the plain terms of the definition of "drug paraphernalia" contained in N.J.S.A. 2C:36-1, and therefore, the legislative history of the New Jersey drug paraphernalia law does not negate the evident legislative intent to subject any person who distributes hypodermic needles or syringes to prosecution under either N.J.S.A. 2C:36-6(a) or N.J.S.A. 2C:36-3, and that the exemptions provided by N.J.S.A. 2C:36-6(c) do not apply to alleged violations of N.J.S.A. 2C:36-3. The Prosecutor also argues that a municipality is not "a governmental agency" within the intent of N.J.S.A. 2C:36-6(c).
We conclude that even if N.J.S.A. 2C:36-6(a) is construed to be the only section of the drug paraphernalia law that prohibits the possession or distribution of hypodermic needles and syringes and the term "governmental agency" in N.J.S.A. 2C:36-6(c) includes a municipality, any person who distributes hypodermic needles or syringes to drug addicts for their use in injecting controlled dangerous substances, including a municipal official, would be subject to prosecution as an accomplice to the addict's illegal use of drugs. Therefore, the Atlantic City ordinance purporting to authorize this conduct conflicts with and is thus preempted by the Code of Criminal Justice. See N.J.S.A. 2C:1-5(d); State v. Crawley, 90 N.J. 241, 447 A.2d 565 (1982).
N.J.S.A. 2C:35-10 makes it a criminal offense to possess, use or be under the influence of any controlled dangerous substance. N.J.S.A. 2C:35-5 makes it a criminal offense to manufacture, distribute or dispense, or to possess with the intent to manufacture, distribute or dispense, any controlled dangerous substance. N.J.S.A. 2C:2-6(b)(3) provides that "[a] person is legally accountable for the conduct of another person when ... [h]e is an accomplice of such other person in the commission of an offense," and N.J.S.A. 2C:2-6(c)(1)(b) provides that a person is an accomplice if "he ... [a]ids ... or attempts to aid such other person in ... committing [the offense]." Such accomplice liability applies to drug offenses proscribed by chapter 35 of the Code. See State v. Roldan, 314 N.J.Super. 173, 189, 714 A.2d 351 (App.Div.1998).
Under these provisions, any person who uses a hypodermic needle or syringe to inject a controlled dangerous substance would be guilty of use of a controlled dangerous substance, in violation of N.J.S.A. 2C:35-10. That person also would be guilty of possession of a hypodermic needle or syringe with the intent to use, in violation of N.J.S.A. 2C:36-6(a).
Any person who aids or attempts to aid another person to inject a controlled dangerous substance by distributing a hypodermic needle or syringe to that person would be guilty as an accomplice, in violation of N.J.S.A. 2C:2-6(c) and N.J.S.A. 2C:35-10. That person also would be guilty of distribution of a hypodermic needle or syringe, in violation of N.J.S.A. 2C:36-6(a).[4]
*1210 Although the Legislature has enacted special provisions relating to the possession and distribution of hypodermic needles and syringes, a person who distributes a hypodermic needle or syringe to facilitate a violation of N.J.S.A. 2C:35-10 or other provision of chapter 35 still can be held liable as an accomplice to that offense. The drug paraphernalia laws are similar in this respect to the provisions of the Code governing the possession and distribution of firearms and other weapons. N.J.S.A. 2C:39-1 to -16; N.J.S.A. 2C:58-1 to -18. Those provisions make the possession of weapons unlawful under a variety of circumstances. See, e.g., N.J.S.A. 2C:39-4 (purpose to use unlawfully); N.J.S.A. 2C:39-7 (persons previously convicted of certain crimes or civilly committed for mental disorders). They also tightly regulate the sale or other distribution of certain weapons, particularly firearms. See, e.g., N.J.S.A. 2C:58-1 (requiring registration of manufacturers and wholesale dealers of firearms); N.J.S.A. 2C:58-2 (requiring licensing of retail dealers of firearms). But these regulatory provisions in no way negate a violator's criminal liability as a principal or accomplice for substantive offenses proscribed by other sections of the Code. Thus, a person who possesses a handgun without a permit may be prosecuted for unlawful possession of a weapon, in violation of N.J.S.A. 2C:39-5(b), and if that person's purpose in possessing the gun is to commit or assist another in committing a substantive offense, he or she may be prosecuted for possession of a weapon for an unlawful purpose, in violation of N.J.S.A. 2C:39-4(a). However, if the possessor of a handgun transfers the gun to another person to use in the commission of a robbery or other offense, that person also would be guilty as an accomplice to the substantive offense.[5] Such accomplice liability would apply even to the categories of persons who are exempted by N.J.S.A. 2C:39-6 from liability for unlawful possession of a weapon. See N.J.S.A. 2C:2-6(d); State v. Hinds, 143 N.J. 540, 549-51, 674 A.2d 161 (1996).
We believe that the Legislature's intent in enacting the drug paraphernalia laws was similar to its intent in enacting the provisions relating to the possession and distribution of firearms and other weapons, that is, to give law enforcement officers more effective tools to combat the evils of the advertisement and distribution of drug paraphernalia. See Prefatory Note to the Model Drug Paraphernalia Act, which states that "[t]his Model Act was drafted ... to enable States and local jurisdictions to cope with the paraphernalia problem" by establishing "four criminal offenses intended to prohibit the manufacture, advertisement, delivery or use of Drug Paraphernalia." As the Court discussed in Town Tobacconist, supra, 94 N.J. at 96, 462 A.2d 573, the prosecution of such an offense poses substantial proof problems because most drug paraphernalia, unlike other instruments of crime, have both legitimate and illegitimate uses. For example, a hypodermic syringe can be used not only by a drug addict to inject a controlled dangerous substance but also by a diabetic to inject insulin. Consequently, it is difficult for a prosecutor to prove that a drug paraphernalia distributor's purpose in selling a particular item of alleged drug paraphernalia is to facilitate unlawful rather than lawful conduct, as is required to *1211 establish accomplice liability. See N.J.S.A. 2C:2-6(c); State v. Norman, 151 N.J. 5, 31-32, 697 A.2d 511 (1997).
However, under the drug paraphernalia laws, a prosecutor is not required to establish such an unlawful purpose. The mens rea element of the offense proscribed by N.J.S.A. 2C:36-3 is "knowing" rather than "purposeful" conduct. The offense of selling or other distribution of a hypodermic needle or syringe proscribed by N.J.S.A. 2C:36-6(a) does not contain any mens rea element, and therefore, under N.J.S.A. 2C:2-2(c)(3), a requirement of "knowing" conduct also must be read into this section. See State v. Demarest, 252 N.J.Super. 323, 326-27, 599 A.2d 937 (App.Div.1991). In this State, the proof of this "knowing" mens rea element of the drug paraphernalia offenses may not be that much easier to establish than purposeful conduct. See Town Tobacconist, supra, 94 N.J. at 109, 462 A.2d 573 (holding that "while under the Model Act a seller could be prosecuted where he reasonably should have known that his products would be used with illicit drugs, in New Jersey the [Drug Paraphernalia] Act requires the seller actually know that an item would be so used"). Nevertheless, the evident intent of the drug paraphernalia laws was to facilitate prosecutions for distribution of drug paraphernalia by only requiring a showing of "knowing" rather than "purposeful" conduct. See Town Tobacconist, supra, 94 N.J. at 110 n. 11, 462 A.2d 573. Therefore, there is no basis for reading into the chapter 36 provisions proscribing distribution of drug paraphernalia an implicit exemption from accomplice liability for the substantive drug offenses proscribed by chapter 35.
With this understanding of the intent of our drug paraphernalia law, it is clear that even if N.J.S.A. 2C:36-6(a) is the only section of the drug paraphernalia laws that proscribes the distribution of hypodermic needles and syringes and if N.J.S.A. 2C:36-6(c) exempts any category of person or entity listed therein from prosecution under N.J.S.A. 2C:36-6(a), such a person or entity still could be prosecuted as an accomplice under N.J.S.A. 2C:2-6(c) and N.J.S.A. 2C:35-10 for distributing a hypodermic needle or syringe to a drug addict to assist the addict in injecting illegal drugs. Thus, a doctor may provide a diabetic patient with a hypodermic syringe for the patient's use in injecting insulin, but if an unscrupulous doctor were to go into the business of selling hypodermic syringes to drug addicts, that doctor would be subject to prosecution as an accomplice of the drug addicts. Similarly, even though a pharmacist may fill a prescription for a hypodermic needle or syringe in the course of his or her professional practice, a pharmacist who dispenses such items without a prescription for drug addicts to use in injecting illegal drugs would be subject to accomplice liability for the addicts' unlawful use of the drugs.
Assuming that the term "governmental agency" in N.J.S.A. 2C:36-6(c) encompasses a municipality such as Atlantic City, the municipality or any of its employees is in the same position as any other entity or person to which the exemption provided by N.J.S.A. 2C:36-6(a) applies. They may possess or distribute hypodermic needles and syringes for any lawful purpose but not for the purpose of assisting a violation of one of the provisions of chapter 35. Thus, a municipality could possess hypodermic needles or syringes for the purpose of administering flu vaccine, and assuming it had the requisite approvals, a municipality could distribute hypodermic syringes to diabetics. However, neither N.J.S.A. 2C:36-6(c) nor any other section of the Code exempts a municipality or its employees from prosecution if they distribute *1212 hypodermic needles or syringes to drug addicts for them to use in injecting illegal drugs.
We recognize that many people believe that needle exchange programs such as the one adopted by Atlantic City serve a vital public interest in reducing the transmission of the HIV virus and other blood-borne diseases without increasing illegal drug use. We also recognize that there are scientific studies supporting this viewpoint.[6] However, Atlantic City and its employees are not exempt from the Code provisions prohibiting the possession, use and distribution of drugs and drug paraphernalia simply because they adopted a needle exchange program for beneficent reasons. As we pointed out in State v. McCague, 314 N.J.Super. 254, 262-63, 714 A.2d 937 (App.Div.), certif. denied, 157 N.J. 542, 724 A.2d 802 (1998):
The Legislature has the power to impose criminal liability regardless of a defendant's motive or state of mind and has done so here in the effort to combat the scourge of the manufacturing, distribution and use of controlled dangerous substances.... [A]ssertions of good motive or humanitarian concern ... do not vitiate a [statute] specifying actions constituting criminal conduct.
Although McCague involved a needle exchange program adopted by a private non-profit group, a political subdivision of the State is subject to the same prohibitions of the criminal law as a private organization.
Lastly, we note that bills that would have authorized needle exchange programs have been introduced in the Legislature on numerous occasions, see, e.g., S. 1623, 211th Leg. (2004); A. 2981, 211th Leg. (2004); A. 807, 211th Leg. (2004); A. 1620, 210th Leg. (2002), but thus far the proponents of needle exchange programs have not succeeded in persuading the Legislature that such programs are in the public interest. The failure of enactment of such legislation precludes an individual municipality from adopting a needle exchange program on its own because the policy determination whether to authorize an exemption from the provisions of the Code of Criminal Justice for such programs rests exclusively with the Legislature. See Crawley, supra, 90 N.J. 241, 447 A.2d 565; State v. Ulesky, 54 N.J. 26, 29-31, 252 A.2d 720 (1969).
Affirmed.
NOTES
[1] We note that former Governor McGreevey issued an executive order on October 26, 2004 that authorizes the establishment of municipal needle exchange programs. An appeal challenging the validity of that order is currently pending before this court. Kean v. Dep't of Health and Senior Servs., A-4244-04T3.
[2] The Model Act simply includes these terms within the definition of "drug paraphernalia." See Model Drug Paraphernalia Act, supra, at Art. I.
[3] This amendment also added an exemption for any person who "obtains the hypodermic syringe or hypodermic needle by a valid prescription issued by a licensed physician, dentist or veterinarian and uses it for its authorized purpose." N.J.S.A. 2C:36-6(b).
[4] Under the Prosecutor's interpretation of the drug paraphernalia laws, that person also would be guilty of a violation of N.J.S.A. 2C:36-3.
[5] Indeed, a person may be found guilty as an accomplice for distributing what is ordinarily considered to be an innocuous item if his or her purpose is to facilitate the commission of a crime. See, e.g., United States v. Eberhardt, 417 F.2d 1009, 1012-13 (4th Cir.1969) (blood), cert. denied, 397 U.S. 909, 90 S.Ct. 907, 25 L. Ed.2d 90 (1970); United States v. Ragland, 306 F.2d 732, 735 (4th Cir.1962) (sugar), cert. denied, 371 U.S. 949, 83 S.Ct. 504, 9 L. Ed.2d 498 (1963).
[6] There also are scientific studies that reach a contrary conclusion. See Julle Bruneau et al., High Rates of HIV Infection among Injection Drug Users Participating in Needle Exchange Programs in Montreal: Results of a Cohort Study, Am. J. Epidemiology, Dec. 15, 1997, at 994; A.R. Moss, Epidemiology and the Politics of Needle Exchange, Am. J. Pub. Health, Sept. 2000, at 1385.