20 A.3d 451 (2011)
420 N.J. Super. 231
CLUB 35, L.L.C., Plaintiff-Appellant,
v.
BOROUGH OF SAYREVILLE, Defendant-Respondent.
No. A-5932-09T3.
Superior Court of New Jersey, Appellate Division.
Argued February 28, 2011.[*]
Decided June 14, 2011.
*453 Gregory W. Vella, Long Branch, argued the cause for appellant (Collins, Vella & Casello, L.L.C., attorneys; Mr. Vella, of counsel and on the briefs).
Thomas A. Abbate argued the cause for respondent (DeCotiis, Fitzpatrick & Cole, L.L.P. and McKenna, DuPont, Higgins & Stone, attorneys; Judy A. Verrone, Teaneck, of counsel; Mr. Abbate, on the brief; Edward G. Washburne, Newark, on the supplemental brief).
Before Judges A.A. RODRÍGUEZ, GRALL and COBURN[1].
The opinion of the court was delivered by
GRALL, J.A.D.
Plaintiff Club 35, L.L.C., appeals from a grant of summary judgment upholding an ordinance enacted by defendant Borough of Sayreville. Club 35 contends the ordinance is preempted by an offense, N.J.S.A. 2C:33-27, that is part of the New Jersey Code of Criminal Justice (the Code), N.J.S.A. 2C:1-1 to 98-4. We agree.
The ordinance supplements Chapter V, Police Regulations, of the Borough of Sayreville's General Ordinances. Sayreville Rev. Gen. Ord. §§ 5-9A to -9A.5. As does its counterpart Code offense, N.J.S.A. 2C:33-27, the ordinance regulates a practice commonly known as BYOB  bringing your own alcoholic beverage to consume at an establishment that serves or sells other drinks or food but is not authorized to sell alcohol for on-premises consumption. We use the term "unlicensed premises" to refer to establishments that have those characteristics.
Questions of preemption by a Code provision are governed by special rules. In "matters of local concern," municipalities generally have broad authority to legislate in the areas of "public health, safety and welfare" in the interest of "local inhabitants." State v. Crawley, 90 N.J. 241, 247-48, 447 A.2d 565 (1982) (internal quotations omitted); see N.J. Const. art. IV, § 7, ¶ 11; N.J.S.A. 40:48-1, :48-2. But the Code contains a specific provision, N.J.S.A. 2C:1-5d, that limits this municipal authority. It furthers "[t]he Legislature's central purpose in enacting the [Code]," which "was to create a consistent, comprehensive system of criminal law," one without "inconsistencies, ambiguities, outmoded and conflicting, overlapping and redundant provisions." Crawley, supra, 90 N.J. at 250-51, 447 A.2d 565 (internal quotations and emphasis omitted). "[L]ocal counterparts to provisions of the Code" undermine that goal. Id. at 251, 447 A.2d 565; see also State v. Felder, 329 N.J.Super. 471, 474-75, 748 A.2d 163 (App.Div. *454 2000); State v. Meyer, 212 N.J.Super. 1, 4-5, 512 A.2d 1139 (App.Div.1986). Crafted to further and shore up this central purpose, N.J.S.A. 2C:1-5d provides for preemption of local regulations by State policies expressed in the Code by either inclusion or exclusion:
Notwithstanding any other provision of law, the local governmental units of this State may neither enact nor enforce any ordinance or other local law or regulation conflicting with, or preempted by, any provision of this code or with any policy of this State expressed by this code, whether that policy be expressed by inclusion of a provision in the code or by exclusion of that subject from the code.
This statute's preemption by inclusion clause reflects "a general legislative intent to exclude local legislation from areas covered by the Code." Crawley, supra, 90 N.J. at 251, 447 A.2d 565. In Felder, we applied this clause and held that a municipal ordinance was preempted because both it and provisions of the Code prohibited unlawful acquisition of a controlled dangerous substance and solicitation of drug activity. 329 N.J.Super. at 473-75, 748 A.2d 163. Similarly, in State v. Paserchia, we held that a municipal ordinance prohibiting disturbance of a lawful congregation or assembly was preempted because a Code offense covered "the conduct sought to be prohibited by" the ordinance. 356 N.J.Super. 461, 464, 466-67, 813 A.2d 556 (App.Div.2003).
The preemption by exclusion clause of N.J.S.A. 2C:1-5d goes further. With it, the Legislature "alert[ed] the judiciary to `the need to protect ... negative unexpressed state policies.'" Crawley, supra, 90 N.J. at 244-45, 447 A.2d 565 (quoting Final Report of N.J. Law Revision Commission, Vol. II: Commentary at 12-13). To apply the preemption by exclusion clause, a court must determine whether the Code's silence on a point "signifies an affirmative legislative intent to decriminalize that conduct except as covered by the Code." Id. at 245, 447 A.2d 565. The ordinance at issue in Crawley proscribed loitering, and the Court concluded it was preempted because both the legislative history and structure of the Code demonstrated the Legislature's intention to "decriminalize" the conduct. Id. at 245-47, 447 A.2d 565; see Felder, supra, 329 N.J.Super. at 473-75, 748 A.2d 163 (summarizing the Court's reasoning in Crawley and indicating that the exclusionary clause would preempt an ordinance addressing the same subject even if it focused on a different aspect of the conduct).
When a particular Code offense grants some authority for municipal legislation on the subject, the preemption by inclusion and exclusion clauses are both implicated. In Meyer, the Code offense permitted municipal regulation by zoning, but the ordinance regulated the conduct itself, not its location; we applied N.J.S.A. 2C:1-5d and found the ordinance preempted because it regulated in a manner not authorized by the Code offense and exceeded the authority granted. 212 N.J.Super. at 5, 512 A.2d 1139. Because Meyer was decided prior to Crawley and Felder, we restate its holding in light of those cases: by including conduct in a Code offense, the Legislature preempted municipal action regarding the same conduct; by reserving a municipality's right to permit the conduct in specified zones, the Legislature demonstrated its intent to exclude all forms of local regulation other than zoning. See N.J.S.A. 2C:1-5d.
Guided by the foregoing judicial interpretations of N.J.S.A. 2C:1-5d, we turn to consider the pertinent aspects of the *455 Code offense and ordinance at issue on this appeal.
N.J.S.A. 2C:33-27, provides:
a. No person who owns or operates a restaurant, dining room or other public place where food or liquid refreshments are sold or served to the general public, and for which premises a license or permit authorizing the sale of alcoholic beverages for on-premises consumption has not been issued:
(1) Shall allow the consumption of alcoholic beverages, other than wine or a malt alcoholic beverage, in a portion of the premises which is open to the public; or
(2) Shall charge any admission fee or cover, corkage or service charge or advertise inside or outside of such premises that patrons may bring and consume their own wine or malt alcoholic beverages in a portion of the premises which is open to the public.
(3) Shall allow the consumption of wine or malt alcoholic beverages at times or by persons to whom the service or consumption or [sic] alcoholic beverages on licensed premises is prohibited by State or municipal law or regulation.
b. Nothing in this act shall restrict the right of a municipality or an owner or operator of a restaurant, dining room or other public place where food or liquid refreshments are sold or served to the general public from prohibiting the consumption of alcoholic beverages on those premises.[2]
c. ....
[(Emphasis added).]
In sum, the Code offense: 1) regulates BYOB on all unlicensed premises in only those portions open to the public; 2) specifies what an owner and operator of an unlicensed premises may and may not do or allow; 3) restricts permissible hours of consumption by incorporating the hours during which consumption in licensed premises is lawful under State and municipal law; and 4) reserves a municipality's right to prohibit BYOB "on those premises" where it is permitted by the Code offense.
Like N.J.S.A. 2C:33-27, Sayreville's counterpart ordinance regulates BYOB in unlicensed premises. The ordinance: 1) prohibits BYOB in all commercial establishments that are not restaurants within the meaning of the ordinance's definition; 2) specifies what an owner or operator of a restaurant may and may not do or allow and also what patrons may and may not do in all areas of the establishment; and 3) sets hours for permissible consumption of alcohol independent of those applicable in licensed premises.
While N.J.S.A. 2C:33-27b authorizes a municipality to prohibit BYOB, Sayreville not only prohibits BYOB in commercial establishments that do not qualify as restaurants under its definition, but also regulates BYOB in restaurants where it is permitted. Sayreville's regulations, paragraphs (a)-(m) of § 5-9A.4, are a counterpart to those in N.J.S.A. 2C:33-27a(1)-(3). Some paragraphs conflict with the statute. *456 For example, where the Code incorporates hours for consumption in licensed premises, the ordinance states special hours, § 5-9A.4(e); and where the Code regulations apply only to owners and operators, the ordinance regulates the conduct of patrons and employees as well, § 5-9A.4(c), (d), (h), (j), (k). Other paragraphs are redundant of and restate the Code's rules  paragraph f prohibits the fees addressed in N.J.S.A. 2C:33-27a(2) and also precludes "membership fees."
But for the reservation of municipal authority in N.J.S.A. 2C:33-27b, it would be clear that the Sayreville ordinance is preempted by N.J.S.A. 2C:33-27 under the rules stated in N.J.S.A. 2C:1-5d. The ordinance addresses a subject included in a Code offense in a way that undermines the Legislature's goal in enacting it. Normally, that ends the inquiry. Felder, supra, 329 N.J.Super. at 473-75, 748 A.2d 163. Further analysis is required, however, because this Code offense reserves a municipality's right to "prohibit[] the consumption of alcoholic beverages on" unlicensed premises. N.J.S.A. 2C:33-27b.
Sayreville contends, and we agree, that the right reserved in N.J.S.A. 2C:33-27b permits a municipality to enact and enforce an ordinance that prohibits BYOB in "commercial" unlicensed premises other than exempt restaurants. This statutorily reserved right cannot be understood, as Club 35 suggests, to require a municipality to ban BYOB in all or none of its unlicensed premises.
The statutory language does not indicate any intention on the part of the Legislature to require a municipality to treat all unlicensed premises in the same way. When the variety of establishments serving food or beverage for on-premises consumption is considered, it is quite unlikely that the Legislature meant to compel an all-or-nothing approach. Without doubt, consumption of alcohol in an establishment that is in the business of serving meals has materially different implications for public order and safety than consumption of alcohol in unlicensed dance halls, cars in parking lots of drive-in restaurants, supermarkets with salad bars and tables, and movie theaters with popcorn and individual seats. It is more likely that the Legislature intended each municipality to make rational distinctions relevant to local conditions and the welfare of its inhabitants and in accordance with its general legislative authority. See N.J.S.A. 40:48-1, :48-2.
Courts read statutes with the assumption that the Legislature intended rational not absurd results, especially when absurdity is not required by the plain meaning of the statute. See N.J.S.A. 1:1-1; Hubbard ex rel. Hubbard v. Reed, 168 N.J. 387, 392-93, 774 A.2d 495 (2001). Here, reading the right reserved in N.J.S.A. 2C:33-27b so as to allow a municipality to make rational distinctions between classes of unlicensed premises is consistent with a common-sense meaning of the statute's unqualified reservation of the right and the broad authority to legislate in local matters delegated to municipalities. See N.J.S.A. 40:48-1, :48-2; Crawley, supra, 90 N.J. at 247-48, 447 A.2d 565.
For the foregoing reasons, we hold that a municipality may prohibit BYOB in all commercial unlicensed premises and exempt from that prohibition a clearly, objectively and rationally defined class of commercial unlicensed premises, such as restaurants. Additionally, because N.J.S.A. 2C:33-27 does not address BYOB in unlicensed premises where a municipality prohibits BYOB, we hold that a municipal ordinance prohibiting BYOB in all or some unlicensed premises may be enforced against owners and operators who allow *457 BYOB where it is prohibited and the patrons who participate.[3]
That said, in those places where a municipality opts to permit BYOB, it may not regulate the practice. The Legislature has regulated BYOB as it deems appropriate in N.J.S.A. 2C:33-27a(1)-(3), and N.J.S.A. 2C:33-27b reserves nothing more than a municipal right to prohibit BYOB. Under Meyer, Crawley and N.J.S.A. 2C:1-5d, because N.J.S.A. 2C:33-27b does not reserve a municipality's right to regulate BYOB, any ordinance that does so is preempted because that right is excluded from the Legislature's grant of municipal authority. Under Felder and N.J.S.A. 2C:1-5d, because N.J.S.A. 2C:33-27a(1)-(3) regulates BYOB where it is permitted, local regulations on the same subject are preempted.
As our discussion of paragraphs (a)-(m) of subsection 5-9A.4 of Sayreville's ordinance demonstrates, the dominant purpose is to permit BYOB only when practiced in conformity with Sayreville's detailed regulations, which are preempted. Thus, although Sayreville may prohibit but not regulate BYOB in all commercial establishments, the entire ordinance must be invalidated and cannot be saved by application of the severability clause. See Inganamort v. Borough of Ft. Lee, 72 N.J. 412, 422, 371 A.2d 34 (1977).
Club 35 also urges us to invalidate the ordinance's definition of restaurant as arbitrary, vague and contrary to principles of equal protection. Because Sayreville's ordinance is preempted, it is unnecessary to address those claims. If Sayreville elects to enact an ordinance prohibiting BYOB in all commercial establishments but restaurants, it must distinguish unlicensed premises where BYOB is permitted and prohibited on a basis rationally related to a permissible local purpose and define the respective classes with sufficient clarity and objectivity to permit compliance and uniform enforcement. See Cell South of N.J., Inc. v. Zoning Bd. of Adjustment of West Windsor Twp., 172 N.J. 75, 796 A.2d 247 (2002) (discussing standards for assessing the validity of municipal ordinances); Doe v. Poritz, 142 N.J. 1, 662 A.2d 367 (1995) (applying principles of equal protection under the federal and state constitutions); State v. Cameron, 100 N.J. 586, 498 A.2d 1217 (1985) (discussing constitutionally impermissible vagueness). Sayreville may not define the term restaurant to regulate BYOB therein.
We summarize our conclusions. Sayreville Rev. Gen. Ord. §§ 5-9A to -9A.5 is preempted. N.J.S.A. 2C:33-27b permits a municipality to prohibit BYOB either in all unlicensed premises or in all but an objectively, clearly and rationally defined exempted class of unlicensed premises. A municipality may enforce an ordinance prohibiting BYOB against owners, operators and patrons in violation. But, if a municipality permits BYOB, it may not enact an ordinance that regulates *458 BYOB where it is permitted or punishes violations of N.J.S.A. 2C:33-27. In that circumstance, N.J.S.A. 2C:33-27 controls and preempts local ordinances.
Reversed.
NOTES
[*] After oral argument, we directed the parties to file supplemental briefs because they had not addressed a controlling statute, N.J.S.A. 2C:1-5d. The briefs were submitted on May 9 and 16, 2011.
[1] Judge Coburn did not participate in oral argument. However, the parties consented to his participation in the decision. R. 2:13-2(b).
[2] This Code offense incorporates verbatim (with the exception of a typographical error noted above and not found in the law as first adopted) three statutes adopted prior to the Code in L. 1977, c. 244, §§ 1-3 that were formerly codified as N.J.S.A. 2A:170-25.21 to -25.23. N.J.S.A. 2C:33-27 was added to the Code by L. 1999, c. 90, § 5 (an act revising multiple statutes, some part of the Code and others not). The "act" referenced in N.J.S.A. 2C:33-27b is L. 1977, c. 244, §§ 1-3, which includes nothing other than the sections codified as N.J.S.A. 2C:33-27a-c. Because N.J.S.A. 2C:33-27 was not adopted with the Code, the reference to "act" in N.J.S.A. 2C:33-27 cannot be understood to exempt this provision from N.J.S.A. 2C:1-5d.
[3] We emphasize that we do not hold that a municipality may punish patrons who drink beer or wine where the municipality permits it and the owner or operator is in violation of N.J.S.A. 2C:33-27. The Code offense governs in those premises, and it does not reach the conduct of patrons. Several acts of owners or operators subject to punishment under N.J.S.A. 2C:33-27a(1)-(3) necessarily include acts of patrons. Action by a patron is inevitably incident to that of the owner; for example, whenever an owner allows consumption, a patron is consuming. The Legislature has expressly stated that conduct "inevitably incident" to the conduct constituting an offense is not punishable unless the offense is defined to include it. See N.J.S.A. 2C:2-6e(2) (precluding accomplice liability in that circumstance). Thus, the statute's silence as to patrons, read in conjunction with N.J.S.A. 2C:2-6e(2), indicates its intention not to punish patrons.