225 N.J. Super. 236 (1988)
542 A.2d 36
TOWNSHIP OF RANDOLPH, PLAINTIFF-RESPONDENT,
v.
ROBIN LAMPRECHT, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 9, 1988.
Decided May 27, 1988.
*237 Before Judges PETRELLA and DREIER.
Jeffrey D. Ullman argued the cause for appellant (Ullman & Holtzman, attorneys; Jeffrey D. Ullman, on the brief).
Jane M. Coviello argued the cause for respondent (Villoresi, Jansen & Shaw, attorneys; Jane M. Coviello, on the brief).
The opinion of the court was delivered by DREIER, J.A.D.
Defendant appeals from a Law Division judgment after a trial de novo holding defendant to have been in violation of the single-family R-3 use restriction in the zoning ordinance of the Township of Randolph. On the premises in question is a "large old" home, in which defendant and his family reside, a swimming pool, and a detached three-car garage, the second story of which contains living quarters. The quarters are occupied by defendant's caretaker/chauffeur and the caretaker's wife. The caretaker, a carpenter by trade who occasionally subcontracts side work to supplement his income, performs a variety of duties for defendant. He maintains the grounds, lawn, shrubs and pool; maintains and repairs the house and garage; keeps the premises secure; and acts as chauffeur for defendant's wife (who does not drive) and defendant's children, driving them to and from social and recreational activities, doctors' appointments, and shopping trips. Defendant is away from home for periods of two to seven days at least once a month.
*238 There was no explicit testimony describing the nature of the living quarters above the garage. We are told that the property appears residential from the outside, blends in with the rest of the neighborhood, and is well maintained. There have been no complaints from neighbors regarding loud noises or untoward occurrences, nor is there any particular problem with traffic congestion. According to the Township's zoning official, it was not uncommon for residents of the Township to have domestic employees living in their homes, yet he knew of no other instance of a garage apartment being employed for this purpose.
Both the municipal court judge and the Law Division judge determined that there was a zoning violation because the premises contained two separate and independent living quarters, each designed for and used by separate families. The Law Division judge specifically noted that a crucial factor was not the caretaker's status as a live-in employee, but that the separate apartment is in a detached garage. He stated that had the couple lived in an apartment over an attached garage there probably would have been no zoning violation. However, if a member of defendant's family had lived in the apartment above the garage there still would be a violation.
The Township of Randolph's zoning ordinance, section 33-6, defines the term "single-family residence" as "a building or structure lawfully accommodating only one family." The same section defines "dwelling unit" as "a unit comprising living accommodations designed and used for occupancy by only one family." It further defines "family" as
a group of persons related by blood or law [and] up to three persons unrelated by blood, marriage, or adoption living privately together as a single housekeeping unit and using certain rooms and cooking or bathing facilities in common....
Since we consider the main issues in this case to be whether the detached garage with servant's quarters constituted an accessory building, and whether its use to house the caretaker and his *239 wife constituted an accessory use, we must examine the ordinance's definition of these terms.

Accessory Building means a building or structure, on the same lot with and subordinate to a principal building, occupied or devoted exclusively to an accessory use....

Accessory Use means a use customarily incident and subordinate to the principal and primary use upon any premises and located on the same premises it is intended to serve.
Defendant was specifically charged with the violation of ordinance sections 33-94 and 33-101. Section 33-94, insofar as it is applicable to this case, permits only a single-family residential use in the R-1 zone and permits "[a]ccessory uses customarily incident and subordinate to" a permitted principal use, but excludes any business or professional activity except as otherwise permitted in this section. Section 33-101 incorporates section 33-94 by reference and prohibits the same uses in an R-3 single-family residence district, the two districts being the same except for certain setback and other considerations which are inapplicable here. Accessory buildings are regulated by section 33-11 of the ordinance, but no violation has been alleged of any of its provisions. Section 33-21 prohibits a second principal building on the same lot and it also states that
no building to be used as a dwelling shall be constructed, altered or moved on, to or in the rear of any buildings situated on the same lot.
The trial judge alluded to this section as an additional argument to sustain the conviction.[1]
We need not reach the question of whether a family includes its servants. Although it appears that up to three persons unrelated to the family and sharing cooking or bathing facilities might be considered part of a family,[2] the controlling *240 provisions in this case are those permitting accessory uses. The trial judge found that providing quarters for a caretaker/chauffeur was not an accessory use, since the services he provided could have been contracted from other sources such as a pool maintenance company, gardener, carpenter and the like. Yet we know of no requirement that these services be provided by outside sources when a live-in employee could be available. The trial judge's arguments could be applied to a nursemaid, housekeeper, cook or other employees which a family may determine to hire on a full-time, live-in basis. We also know of no requirement that quarters for such employees must be provided solely in the principal residence structure. It certainly is not uncommon for servant's quarters to be provided in a separate facility to preserve the privacy of both the family and servants.
In this case, we determine that the additional use of the garage structure for servant's quarters was clearly an accessory use "subordinate to the principal and primary use" of the principal residence.[3] If the employment relationship ceases or is proved to be a sham, then the use would no longer be incidental to that of the principal residence. However, in this case the employment was stipulated.
This case is distinguishable from Rowatti v. Gonchar, supra. There the Supreme Court held that the construction of a separate dwelling unit within the one-family structure caused it to become a two-family dwelling prohibited by the zoning ordinance, even though the structure was to be occupied by two generations of a single family. In that case the ordinance *241 prohibited both a multi-family structure and a multi-family use. There was no question of an accessory use. Here there is no showing of a conversion of the property to accommodate a second family. The issue has arisen in an entirely different context, a quasi-criminal conviction for violation of the zoning ordinance, as opposed to an appeal from a board of adjustment determination construing the zoning ordinance;[4] and the nature of the two ordinances is different.[5]
Since it is clear to us that the use in question is an accessory use permitted by the ordinance, there is no need to consider the additional arguments raised by defendant to attack the conviction. We note in passing, however, that both the municipal court and Law Division exceeded their authority in the injunctive phase of their orders by directing defendant to discontinue what both courts considered an unlawful use. Only a penalty may be imposed in a quasi-criminal proceeding charging a defendant with the violation of a zoning ordinance. Belleville v. Parrillo's, Inc., 83 N.J. 309, 318-319 (1980).
Defendant's conviction for the zoning ordinance violation is reversed; the complaint shall be dismissed.
NOTES
[1] We note that defendant was not charged with violating this section and no proof was offered that defendant had constructed, altered or moved living quarters to the garage. The only question was one of use.
[2] But see Rowatti v. Gonchar, 101 N.J. 46, 54 n. 2 (1985), and State v. Baker, 81 N.J. 99, 113 (1979), as to the validity of this limitation.
[3] We deem it to be of no moment that the caretaker/chauffeur supplemented his income with occasional outside carpentry jobs or that his non-employee wife was separately employed. The Township had no right to require that the employee have no other earned income or that the employee be single or if married that the spouse be unemployed.
[4] The issue before us is the review of a quasi-criminal conviction, and the ordinance in question is thus strictly construed. In Rowatti the Court reviewed the board of adjustment's interpretation of the Northvale ordinance, applying the principle that "an appellate court will uphold the factual determinations of an administrative agency `[i]f there is sufficient credible evidence to support those conclusions ...'" 101 N.J. at 51 (quoting Goodman v. London Metals Exch., Inc., 86 N.J. 19 (1981)).
[5] The ordinance in Rowatti prohibited multi-family dwellings, defined as "[a] building designed [for] or occupied by more than one (1) family." 101 N.J. at 53.