**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4219-19

ROBERT T. HEALEY, JR., and
BOBBI HEALEY, husband and
wife,

      Plaintiffs-Appellants,

v.

MOORESTOWN TOWNSHIP
ZONING BOARD OF
ADJUSTMENT,

      Defendant-Respondent.

_____

Submitted May 11, 2021 – Decided June 2, 2021

Before Judges Yannotti and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Docket No. L-2534-19.

Matteo & Associates, LLC, attorneys for appellants (George Matteo and Jacqueline DiRubbo, on the briefs).

Earp Cohn, PC, attorneys for respondent (Peter R. Thorndike, on the brief).

PER CURIAM

Plaintiffs Robert Healey, Jr. and Bobbi Healey appeal from an order entered by the Law Division on June 11, 2020, which entered judgment in favor of defendant Moorestown Township Zoning Board of Adjustment (Board) and dismissed their complaint with prejudice. We affirm.

I.

We briefly summarize the relevant facts and procedural history. Plaintiffs are husband and wife, and own real property located on Main Street in the Township's R-3 Residence District. Plaintiffs' property consists of a 1.34-acre lot, improved with a single-family residence that is approximately seven thousand square feet. Plaintiffs' home contains a first floor with a living and kitchen area, a second floor with four bedrooms and three full bathrooms, and a third floor with a bedroom, one half bathroom, and a storage room. Plaintiffs' lot also has a detached garage with four bays.

In February 2019, plaintiffs applied to the Township for a zoning permit to convert a portion of the unfinished attic space above the detached garage into an 881-square foot "au pair suite." The suite would include a bedroom with walk-in closets, a full bathroom with a skylight, a living room, and a kitchen. Utility services for the suite would be provided from the main residence, and the

2

suite would not have separate utility meters. Plaintiffs also sought permission to convert part of the first-floor storage area of the garage into a home gym for the family's use, and a portion of the garage's second-floor space into multiple storage areas.

On February 28, 2019, Peter D. Clifford, the Township's zoning official, denied the application. He noted that plaintiffs' property is in the Township's R-3 Residence District, and the zoning ordinance only permits one single-family dwelling per lot in that zone. Clifford determined that the proposed suite would constitute a second detached dwelling unit on the lot in violation of the ordinance.

Plaintiffs appealed the denial of the zoning permit to the Board and alternatively sought a variance to permit construction of the proposed suite. Thereafter, plaintiffs withdrew their request for a variance and proceeded solely on their appeal from the denial of the permit.

On October 15, 2019, the Board conducted a public hearing on plaintiffs' appeal. At the hearing, plaintiffs testified that they had lived in the house for about three and one-half years. They do not have children but plan to raise a family and hire an au pair. They noted that some hiring agencies impose certain

housing requirements for au pairs, which include privacy, ability to lock doors, and access to bathrooms.

Clifford explained his decision. He stated that the proposed renovations would create a second single-family detached dwelling on the lot, which is not permitted in the R-3 Residence District. He noted that during his twenty-two years as zoning official, he had consistently interpreted the ordinance to allow the addition of an "in-law" or "au pair" suite if the suite was "attached to the dwelling unit" and had "the same utilities."

Clifford stated, however, that plaintiffs' proposed suite would constitute a second single-family dwelling because it was detached from the main dwelling unit. He noted that a domestic employee would occupy the suite, rather than a family member; however, this was not the basis for his decision. He denied the application because there would be "two separate structures" or "two separate living units" on the property.

The Board voted to affirm the zoning official's decision, by a vote of five members to three members. The Board thereafter issued Resolution ZBA #2019-16, which set forth its findings of fact and conclusions of law regarding the appeal. The Board stated in pertinent part:

> The intent of the ordinance is to restrict the number of dwelling to one per lot in the R-3 Residence District.

A-4219-19

This is supported by the plain meaning of the ordinance regulating the residential use of property in the R-3 District and limited same to a single[-]family detached dwelling occupied by related persons living together as one housekeeping unit with exception made only for domestic employees who reside with the family they are serving. Evidence of this legislative intent is the consistent manner in which the ordinance has been applied to prohibit apartments in detached structures in the district. Further, constructing separate living quarters for an au pair in a detached structure does not meet the exception afforded a domestic employee for his or her own quarters since it does not meet the requirement that the servant must reside with the family. To meet that requirement the domestic must reside in the single[-]family dwelling occupied by the related persons who live together as one housekeeping unit in that dwelling. Living in an apartment in a detached garage does not meet that requirement.

In December 2019, plaintiffs filed an action in lieu of prerogative writs in the Law Division. They sought a determination that the proposed living space in the detached garage was a permitted accessory use, and an order directing the Board to issue the zoning permit they had requested. The Board filed an answer and asserted that the court should affirm the Board's decision and dismiss the complaint.

In April 2020, the judge heard oral argument and reserved decision. On June 11, 2020, the judge entered judgment for the Board and dismissed

5

plaintiffs' complaint with prejudice. In the accompanying written opinion, the judge provided findings of fact and conclusions of law.

The judge found there was sufficient credible evidence in the record to support the Board's finding that the proposed suite would constitute a second single-family detached dwelling in a zoning district where only one such dwelling per lot is permitted. The judge further found that the Board's decision was consistent with the zoning ordinance, supported by the facts, and neither arbitrary, capricious, nor unreasonable. This appeal followed.

II.

On appeal, plaintiffs argue that the Board erred by considering the proposed au pair suite as a separate single-family dwelling rather than an accessory use or accessory structure, which is permitted under the Township's ordinance. Plaintiffs contend the Board's decision was arbitrary, capricious, and unreasonable, and the trial court erred by affirming the Board's decision.

A decision of a zoning board "will not be overturned unless it is found to be arbitrary and capricious and unreasonable, with the burden of proof placed on the plaintiff challenging the action." Dunbar Homes, Inc. v. Zoning Bd. of Adjustment, 233 N.J. 546, 558 (2018) (quoting Grabowsky v. Twp. of Montclair, 221 N.J. 536, 551 (2015)). A zoning board's "decisions enjoy a

presumption of validity, and a court may not substitute its judgment for that of the board unless there has been a clear abuse of discretion." Price v. Himeji, LLC, 214 N.J. 263, 284 (2013) (citing Cell S. of N.J., Inc. v. Zoning Bd. of Adjustment, 172 N.J. 75, 81 (2002)).  However, a board's decision on a question of law is subject to de novo review by the courts.  Id. at 559 (citing Chicalese v. Monroe Twp. Plan. Bd., 334 N.J. Super. 413, 419 (Law Div. 2000)).

As stated previously, the Board determined that plaintiffs' proposed renovation of a portion of their detached garage into a living space for an au pair would constitute a second, detached single-family dwelling on a single lot, which is not permitted in the R-3 Residence District.  Plaintiffs argue that the Board's decision is inconsistent with the relevant provisions of the ordinance.

"In construing the language of an ordinance, it is well established that courts apply the same rules of judicial construction as they apply when construing statutes." AMN, Inc. v. Twp. of S. Brunswick Rent Leveling Bd., 93 N.J. 518, 524-25 (1972) (citing Camarco v. City of Orange, 61 N.J. 463, 366 (1972); 1A Sands, Sutherland, Statutory Construction § 30.06 (4th ed. 1972)). The court's paramount goal is to ascertain the intent of the lawmakers, and the "best indicator of that intent" is the language of the enactment. DiProspero v. Penn, 183 N.J. 477, 492 (2005) (citing Frugis v. Bracigliano, 177 N.J. 250, 280

(2003)). "We ascribe to the statutory words their ordinary meaning and significance." Ibid. (citing Lane v. Holderman, 23 N.J. 304, 313 (1957)).

The Township's zoning ordinance divides the municipality into residential districts and identifies the uses permitted in each. MOORESTOWN, N.J., CODE § 180-24. As noted, plaintiffs' property is in the R-3 Residence District. With certain exceptions not relevant here, the uses permitted in the R-3 Residence District are those allowed in the R-1 and R-2 Residence Districts. Id. at §§ 180-21, -24.

The permitted uses include a "single-family detached dwelling." Id. at § 180-8B. The ordinance defines that use as "[a] wholly detached building constructed or adapted for use exclusively as a place of residence for one family only." Id. at § 180-2. The term "family" is defined as "[r]elated persons living together as one housekeeping unit; . . . " Id. at § 180-2. The ordinance also states that: "domestic employees" who reside "with the family" are deemed to be members of the "family." Ibid.

Here, the Board found that as proposed, the modifications to the existing detached garage would create a second single-family detached dwelling on plaintiff's property. The trial court found there was sufficient credible evidence in the record to support that determination.

It is undisputed that the four-bay garage is detached from plaintiff's home. The proposed suite would have a bedroom, bathroom, kitchen facilities, and several closets. There is sufficient credible evidence in the record to support the Board's finding that proposed renovations to the garage would create a second single-family detached dwelling on the lot, which is not permitted by the ordinance.

Plaintiffs argue, however, that the proposed suite on the second floor of the detached garage would be an "accessory use" or "accessory structure" which is permitted in the R-3 Residence District. We disagree.

An "accessory use" is defined in the ordinance as "[a] use on the same lot with but subordinate and customarily incidental to the main use of the lot or of the main building thereon." Id. at § 180-2. An "accessory structure" is defined as "[a] structure on the same lot with but subordinate to that of the main building and used exclusively for a purpose customarily incidental to that of the main building." Ibid.

The ordinance lists several permitted "accessory uses." Id. at § 180-8G. These include certain "home occupations," the renting of not more than three rooms without housekeeping privileges to no more than four "nontransient roomers or boarders," and a "tenant house." Id. at § 180-8G(1)-(4). The

ordinance states that a "tenant house" is "[a] second residence on a single lot that serves as a dwelling, on a temporary basis only, for workers who both live and work on the property, provided that the property is a farm that consists of a minimum of two acres, and . . . is agricultural or equestrian in nature." Id. at § 180-2.

Plaintiffs assert that the detached garage is a permitted accessory use, and that use will continue, along with the proposed gym and storage area. They also assert that the au pair will be a domestic employee who is "residing with the family." Therefore, plaintiffs claim the au pair's use of the proposed residence in the garage will be incidental to their use of the main building.

However, as the trial court found, there was sufficient evidence in the record to support the Board's finding that the proposed living space would be a separate, single-family detached dwelling. The evidence does not support plaintiffs' contention that the proposed living area, in the detached garage, would be "subordinate and customarily incidental" to the use of the main building. Id. at § 180-2.

### III.

In support of their appeal, plaintiffs rely upon Township of Randolph v. Lamprecht, 225 N.J. Super. 236 (App. Div. 1988). In that case, the defendant

and his family resided in a large, old home, and the defendant's caretaker and his wife occupied the second story of a detached three-car garage on the premises. Id. at 237. The caretaker maintained the grounds and the pool, made repairs to the house and garage, kept the premises secure, and acted as a chauffeur for the defendant's wife and children. Ibid. There was, however, "no explicit testimony describing the nature of the living quarters above the garage." Id. at 238.

The Township's zoning ordinance only permitted one single-family residence on the property. Ibid. The ordinance defined family as a group of persons "related by blood or law" and up to three unrelated persons "living privately together as a single housekeeping unit" who use certain rooms and bathing facilities in common. Ibid. The ordinance also permitted an accessory use, which was defined as "a use customarily incident and subordinate to the principal and primary use" of the premises. Id. at 239.

The court held that the living quarters for the caretaker/chauffeur was an accessory use under the ordinance. Id. at 240. The court stated that such living quarters need not be provided in the principal residence structure, and the additional use of the garage structure for the domestic employee was a use subordinate to the principal and primary use of the main building. Ibid.

11

Plaintiffs' reliance upon <u>Lamprecht</u> is misplaced. In that case, there was no explicit testimony describing the nature of the living quarters above the garage. <u>Id.</u> at 238. In this case, the record shows that the proposed apartment will have a bedroom, bathroom, kitchen facilities, and closets. The proposed living quarters are indistinguishable from a single-family residence.

Furthermore, unlike the ordinance at issue in <u>Lamprecht</u>, the Township's ordinance specifically addresses accommodations for domestic employees. As noted, the ordinance defines the term "family" to include domestic employees who reside "with the family."

Here, the record supports the Board's finding that, as proposed, plaintiff's au pair will not be residing "with the family" in the main building. The renovated space in the detached garage will provide the au pair with a separate, independent residence. As the Board found, this would create a second single-family detached dwelling on the lot, which is not permitted under the ordinance.

Plaintiffs further argue that the Township's ordinance does not preclude domestic employees from residing in a detached building or structure. They also contend that the au pair will essentially be a part of their family, and the purpose of having a living space in the detached garage is to allow the au pair "to enjoy some privacy from time to time."

12 <span>A-4219-19</span>

However, as the Board found, plaintiffs' domestic employee would be essentially occupying a separate, independent living area in a detached structure, with its own bedroom, bathroom, kitchen facilities, and closets. Under the ordinance, the domestic employee would be deemed a part of the "family" only if residing "with the family" in the family's house.

Thus, there is sufficient credible evidence in the record to support the Board's finding that the proposed renovations would create a second single-family detached dwelling in the R-3 Residence District, which is not permitted under the ordinance. As the trial court found, the Board's decision was neither arbitrary, capricious, nor unreasonable.

We have considered plaintiffs' other contentions and conclude they lack sufficient merit to warrant discussion in this opinion. R. 2:11-3(d)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

13